In the Matter of **ROYAL ELECTROTYPE CORPORATION**, Debtor.

**Appeal of Alex SHAW and Catherine Shaw, claimants under Reclamation Petition.**

No. 72–1987.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) July 25, 1973.

Resubmitted Under Third Circuit Rule 12(6) Sept. 4, 1973.

Decided Sept. 10, 1973.

As Amended Oct. 16, 1973.

William E. Mowatt, Mowatt, McErlean, Pinto, Theodore & Rubin, Media, Pa., for appellants.

Simon Pearl, Lawrence J. Lichtenstein, Sklar, Pearl, Lichtenstein & Sklar, Philadelphia, Pa., for appellee.

Submitted Under Third Circuit Rule 12(6) July 25, 1973

Before SEITZ, Chief Judge, and ALDISERT, Circuit Judge.

Resubmitted Under Third Circuit Rule 12(6) Sept. 4, 1973

Before SEITZ, Chief Judge, and ALDISERT and GIBBONS, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal from a district court order affirming a bankruptcy referee's decision requires us to decide whether the

law of Pennsylvania relating to consequences of improper filing of a security instrument by a filing officer has been changed by the passage of the Uniform Commercial Code, 12A Penna.Stat.Anno. § 9—303.

■ Appellants, creditors of the bankrupt, Royal Electrotype Corporation, caused to be filed in the office of the Philadelphia Prothonotary and the Pennsylvania Secretary of the Commonwealth an instrument entitled, "Security Agreement," in which the bankrupt gave appellants a security interest in accounts receivable. The Commonwealth Secretary erred in indexing the agreement in its records and showed appellant as the debtor and the bankrupt as the creditor. Although this erroneous information was also listed on the receipt given the appellant at the time of filing, the error was not discovered until after Royal was adjudicated a bankrupt. Appellants filed a reclamation petition with the referee requesting that the receiver deliver to them those proceeds assigned under the Security Agreement. The referee denied the petition and the district court affirmed, holding that the security interest was not perfected because of the improper filing, relying on Pennsylvania case law that "[i]t is the duty of a person offering an instrument for record to see that it is both properly recorded and properly indexed." Commonwealth to the Use of Orris v. Roberts, 392 Pa. 572, 586, 141 A.2d 393, 400 (1958); Prouty v. Marshall, 225 Pa. 570, 576–577, 74 A. 550, 552 (1909); Jarrell v. Fidelity-Philadelphia Tr. Co., 33 Pa. D & C2d 143, 146 (1963). This appeal followed.

■ Pennsylvania law controls this issue. The transaction between Royal and appellants was conducted under Pennsylvania law. Upon the adjudication of bankruptcy, the trustee has "the benefit of all defenses available to the bankrupt as against third persons, including . . . personal defenses." § 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c). "Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law." [1] Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). "This is not a diversity case but the same principle may be applied for the same reasons. . . ." Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967).

That Pennsylvania law controls does not lighten our task because the precise issue presented by this appeal has not been adjudicated by the courts of that state. Conceding that Pennsylvania case law prior to the passage of the Uniform Commercial Code in 1954 holds that the party recording an instrument has the obligation to see that it is recorded properly, appellants rely on § 9—303:

(1) A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in Sections 9—302, 9—304, 9—305, and 9—306. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches.

Appellants observe that the required steps were taken by them and that, therefore, the security interest was perfected: "A financing statement must be filed to perfect all security interests." § 9—302. "A security interest in chattel

---

1. There is no federal *general* common law, but there is federal common law. On the same day *Erie* was decided, Justice Brandeis said in the opinion in another case: "For whether the water of an interstate stream must be apportioned between the two States is a question of 'federal common law' upon which neither the statutes nor the decisions of either State can be conclusive." Hinderlider v. La Plata Co., 304 U.S. 92, 110, 58 S. Ct. 803, 811, 82 L.Ed. 1202 (1938). See also Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), and the cases cited therein.

paper or negotiable documents may be perfected by filing." § 9—304.[2] They contend that their security interest was perfected by filing. They rely on § 9—403(1):

> Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under this Article.

Accordingly, their interest was perfected, they argue, as soon as the statement was presented, accepted, and the filing fee tendered.

■ Because the Pennsylvania courts have not addressed themselves to this precise issue we must ascertain the state law from all available data. "If there be no decision by [the State's highest court] then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court. Bernhardt v. Polygraphic Co., 350 U.S. 198, [76 S.Ct. 273, 100 L.Ed. 199] (1956)." Commissioner v. Estate of Bosch, *supra*, 387 U.S. at 465, 87 S.Ct. at 1783.

### I.

Appellants are not without formidable supporting authorities in pressing their contention. The official Uniform Commercial Code Comment, set forth in 12A Penna.Stat.Anno. § 9—407 supports their view:

> . . . Note, however, that under Section 9—403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that Section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer.

Birnbaum, A.L.I., Secured Transactions Under the Uniform Commercial Code, 1954, § 12.8, states:

### 12.8 WHAT CONSTITUTES FILING

> Under prior law a question sometimes has arisen as to the effect of mistake by the filing officer, such as an error in the index. Is the filing nevertheless effective to protect the secured party, even though one who searched the records was misled; or should the Court say that the mistake prevented both constructive as well as actual notice, even though the secured party and the misled creditor were equally innocent?
>
> The rule stated by Section 9—403(1) is that filing is complete and effective for all purposes of Article 9 when the financing statement has been accepted by the filing officer or when it is presented for filing accompanied by a tender of the fee. From either point on, the secured party is protected.

See also Henson, Secured Transactions Under the Uniform Commercial Code (1973), page 53 and 4 Anderson, Uniform Commercial Code, § 9—403:5 (1971).

### II.

We have not found nor have we been directed to, any case which indicates that the Pennsylvania Supreme Court has attempted to restrict the scope of the operation of that state's Commercial Code. We are not aware of any decision which seeks to dilute the legislative mandate that the U.C.C. "shall be liberally construed and applied to promote its underlying purposes and policies," defined to be "(a) to simplify, clarify and modernize the law governing commercial transactions; (b) to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties; (c) to make uniform the law among various jurisdictions." 12A Penna.Stat.Anno. § 1—102(1), (2).

---

2. § 9—305 and § 9—306 are not applicable to these proceedings.

Cases from other jurisdictions have consistently held that the secured party does not bear the risk of improper indexing by the filing officer so long as the secured party has not by his own conduct caused the error.[3]

But even more impressive is the clear indication from the reported cases that the Pennsylvania courts are not only giving full force and effect to the spirit of the U.C.C. and the statutory text, but also to the official comments accompanying the text. Interpreting another phase of Pennsylvania commercial law in Thompson Maple Products, Inc. v. Citizens National Bank, 211 Pa.Super. 42, 46–47, 234 A.2d 32, 34 (1967), the Pennsylvania Superior Court flatly stated: "Even if that was the law in this Commonwealth prior to the passage of the Commercial Code, it is not the law today. *The language of the new Act is determinative in all cases arising after its passage.*" (Emphasis supplied.)

Even more persuasive is Philadelphia Title Ins. Co. v. Fidelity-Philadelphia Tr. Co., 419 Pa. 78, 84, 212 A.2d 222, 225 (1965), where the Supreme Court, addressing still another aspect of the Code, said "[R]egardless of the pre-Code [law], . . . the matter must be decided by statutory construction and application of the . . . doctrine as it now appears in . . . the Code." And even more significant, for our purposes, is the Pennsylvania Supreme Court's hospitality to the official comment of the Code: "Both the words of [the section] and the official Comment thereto leave no doubt. . . ." *Philadelphia Title Ins. Co., supra,* 212 A.2d at 225. Indeed, the Court makes reference to the official comment to ascertain the intent of the legislature in interpreting § 3—405(1).

### III.

The Trustee-appellee mounts first an argument extolling the virtues of proper identification of creditors in record offices. As impressive as this goes, we question its relevancy here, for here it is a statute we are interpreting. Perhaps the contention would be better addressed to those who legislate commercial code policy in Pennsylvania.

Next the Trustee addresses the Pennsylvania cases of *Prouty* and *Orris*, relied upon by the district court, and In re Thomas Van Dusen Acceptance Corp. v. Gough, 466 F.2d 51 (9th Cir. 1972). *Prouty* was a pre-code case. In *Orris* there was a claim for damages against the prothonotary for the improper filing of a judgment; the U.C.C. issue posed in this appeal was neither presented to nor discussed by the court in its opinion. The *Van Dusen* case is of little help because, not addressing the precise issue before us, it simply held that financing statements which did not state the correct name of the debtor and only a trade name did not comply with the Code and were fatally defective.

We have decided that in the context of the Uniform Commercial Code, the Pennsylvania Supreme Court would not apply the *Prouty-Orris* doctrine to this case. We are persuaded that the court would consider that the holdings of those cases have been changed by § 9—403(1) of the Code as is made crystal clear by the Comments at § 9—407; and that they would adopt the language of Superior Court Judge J. Sydney Hoffman in *Thompson Maple Products* that "it is not the law today."

"The proper function of the courts is to adjudicate, not to legislate; the legislature is and must be the ultimate and paramount source of law."[4] Where both the legislative language and purpose are unmistakably clear, it would be usurpatory judicial lawmaking for a court to ignore the language or to invent an ambiguity for the sole purpose of dissipating it and then filling the void which the court creates with its own

3. In Re Smith, 10 U.C.C.Rptr.Serv. 730 (Referee's Decision, W.D.Okl.1971); In Re Bengston, 3 U.C.C.Rptr.Serv. 283 (Referee's Decision, D.C.Conn.1965); In Re Vaughan, 4 U.C.C.Rptr.Serv. 61 (Referee's Decision, D.C.Mich.1967); In Re McCoy, 330 F.Supp. 533, 536 (D.C.Kan.1971).

4. Tate, The Law-Making Function of the Judge, 28 La.L.Rev. 211, 212 (1968).

cherished policy.[5] In Pennsylvania, a common law state in the greatest tradition, the courts have great freedom to develop substantive and procedural law, but this inherent power is subject to a classic limitation; the power is circumscribed in those areas where the legislature chooses to act. Roger Traynor tells us: "Except for constitutional limitations, legislators innovate [statutes] with a freedom unknown to judges, who must ordinarily stay within the confines of precedent and articulate the reasons for their rules. A statute may be a fat code or a thin paragraph or a starveling sentence. It may cast a heavy shadow on the common law or a light one. . . ." [6] As to the Trustee here, we fear the U.C.C. has cast a heavy shadow.

The judgment of the district court will be reversed and the proceedings remanded with a direction of a further remand to the referee that he grant appellants' petition for reclamation.[7]

5. Cohen, Judicial 'Legisputation' and the Dimensions of Legislative Meaning, 36 Ind.L.J. 414, 415.

6. Traynor, Statutes Revolving in Common-Law Orbits, 17 Cath.U.L.Rev. 401, 402 (1968).

7. A secondary issue presented by this appeal is whether a first advance of $12,000 was covered by the financing statement. We agree with the district court's interpretation that "there is no indication in [the financing statement] or in the security agreement, that it was intended to have the limiting effect the Trustee argues. Again, on the present record, there can really be no doubt that the parties intended the petitioners to have the security interest set forth in the agreement."