**UTAH INTERNATIONAL INCORPORATED, a Delaware Corporation, Plaintiff,**

v.

**INTAKE WATER COMPANY, a Delaware Corporation, Defendant,**

**and**

**State of Wyoming; and Office of State Engineer of the State of Wyoming, Applicants for Intervention,**

**and**

**State of Montana, By and Through the Department of Natural Resources and Conservation, Applicants for Intervention.**

**No. CV–75–108–BLG.**

United States District Court, D. Montana, Billings Division.

Dec. 5, 1979.

**38**

Urban L. Roth, Poore, McKenzie, Roth, Robischon & Robinson, Butte, Mont., for plaintiff.

Peter C. Pauly, Loble & Pauly, Helena, Mont., for defendant.

V. Frank Mendicino, Atty. Gen. for the State of Wyoming and Jack D. Palma II, Asst. Atty. Gen., Cheyenne, Wyo., for applicants in intervention.

Ted J. Doney, Allen B. Chronister, Dept. of Natural Resources and Conservation, Helena, Mont., for intervenor, State of Mont.

## MEMORANDUM AND ORDER

BATTIN, Chief Judge.

This declaratory judgment action has arisen from the competing efforts of Utah International Incorporated, hereinafter "plaintiff", and Intake Water Company, hereinafter "defendant", to acquire appropriative rights in certain waters allocated to the State of Montana under the terms of the Yellowstone River Compact. The facts upon which this action is based are fairly simple.

On November 20, 1973, plaintiff filed three applications for permits to appropriate surface water with the Office of the State Engineer of the State of Wyoming. By these applications, plaintiff sought to appropriate certain waters of the Powder River, a tributary of the Yellowstone River, in Campbell County, Wyoming, for diversion, impoundment and storage in Wyoming and ultimate transportation to and use in the State of Montana.

On December 4, 1973, duplicate copies of plaintiff's applications as originally filed in the Wyoming State Engineer's office were transmitted to the Montana Department of Natural Resources and Conservation, in partial compliance with the terms of Article VII(B) of the Yellowstone River Compact (hereinafter "Compact"). The applications so transmitted to the Department of Natural Resources were not accompanied by the required filing fee.

Substantial changes were made to the contents of plaintiff's applications as originally filed in the Wyoming State Engineer's office before they were finally accepted for filing in Wyoming. Duplicate copies of plaintiff's applications as finally accepted for filing in Wyoming were never transmitted to or filed with the Montana Department of Natural Resources.

There is no question but that the waters sought to be appropriated by the plaintiff under its applications are waters allocated to Montana under the terms of the Compact. On February 27, 1974, Richard T. Munger, Chief of the Water Rights Bureau of the Department of Natural Resources, advised the plaintiff by letter that ". . . it is the position of the Department that any applicant proposing use of water in Montana with intent to count that use against Montana's allocation under the Yellowstone River Compact must apply for a permit pursuant to the Montana Water Use Act . . . ."

On September 27, 1974, defendant filed an application for beneficial water use permit with the Water Resources Division of the Montana Department of Natural Resources and Conservation, and an application for permit to appropriate surface water with the Office of the State Engineer of the State of Wyoming. By such applications, the defendant sought to appropriate certain waters of the Powder River for impoundment and storage in a reservoir located in the states of Montana and Wyoming pending ultimate sale and use in the states of Montana and Wyoming. The defendant

has contended, and the contention stands unrebutted, that its filings in both Montana and Wyoming were proper in form, accompanied by the required filing fees, and followed by the required cross-filings of duplicate applications.

On January 14, 1975, the plaintiff filed its Application for Beneficial Water Use Permit with the Montana Department of Natural Resources and Conservation. The application was for the purpose of appropriating "presently unused and unappropriated waters of the Powder River allocated to the State of Montana for beneficial use pursuant to Article V(B)(4)(a) of the Yellowstone River Compact, 1950." The pleadings show that plaintiff's January 1975 application was filed in proper form, and accompanied by the required filing fee.

On January 14, 1975, the Montana Department of Natural Resources and Conservation assigned a priority date of November 20, 1973, to plaintiff's January 1975 application. The defendant excepted to this action by the Department of Natural Resources, and demanded, both orally and in writing, that the Department amend its records to show a priority date of January 14, 1975, on plaintiff's application. Upon the Department's refusal to assign a later priority date to the plaintiff, the defendant initiated a mandamus proceeding in the District Court of the First Judicial District of the State of Montana, in and for the County of Lewis and Clark. By its mandamus proceeding, the Defendant sought to compel the Department to issue a priority date to the plaintiff in accordance with what it deemed to be the controlling Montana law. At issue in that proceeding, as nearly as may be discerned from the briefs in this case, is the question of whether the Department of Natural Resources and Conservation is authorized to assign priority dates to applications other than in accordance with the Montana Water Use Act of 1973, and whether the priority date issued by the Department in this case was issued in conformity with the Montana Water Use Act.

Subsequent to Intake's filing the state court action, Utah International filed the instant declaratory judgment action. By this action, Utah has asked this Court to adjudicate and declare the rights of both parties to the Yellowstone River Compact waters sought to be appropriated, to approve the November 29, 1973, priority date accorded to the plaintiff's applications by both the State of Wyoming and the State of Montana, to declare that the State of Montana has no jurisdiction to adjudicate the priority of Compact waters for which a diversion point in Wyoming is proposed, and to declare that Wyoming has exclusive jurisdiction to adjudicate the priority of plaintiff's applications, which adjudication is binding upon and must be enforced by the State of Montana.

This case is presently before the Court on motions filed by both parties. The defendant has moved to dismiss for want of subject matter jurisdiction, to dismiss for failure to state a claim, to stay all proceedings in this case pending a determination on the merits of defendant's State mandamus proceeding, to abstain from the exercise of jurisdiction, and to certify to the Supreme Court of the State of Montana a controlling question of Montana law. The plaintiff has moved for summary judgment on its complaint. All motions have been fully briefed and argued.

The Court, having reviewed the positions of the parties and the supporting memoranda, finds itself in an unusual position. It cannot be doubted that water is one of the arid West's most precious resources. Similarly, it cannot be doubted that, because of water's value, a dispute over the right to possession of water is hard-fought. This case is no exception. The anomaly facing the Court in resolving this contest is that the position of neither party can be wholly sustained. The parties to this litigation perceive the issues differently from one another, and perceive different elements in the litigation to be controlling. Because the issues before the Court are somewhat elusively framed, the most reasonable first step toward resolution of the pending motions is deemed to be a definition of this Court's jurisdiction.

In its complaint, the plaintiff predicated jurisdiction upon 28 U.S.C. § 1331(a) and 28 U.S.C. § 2201. Section 1331(a), the general federal question provision, states that:

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. . . .

Section 2201 states that:

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The plaintiff has advanced the proposition that, under the jurisdictional statutes cited in its complaint as well as the controlling case law, this Court not only has original jurisdiction to fully construe the Compact and grant the declaratory relief requested, but also has the exclusive jurisdiction to so do. The fundamental premise of plaintiff's position is that interstate compacts must be construed in light of federal common law, regardless of any state constitutional or statutory provisions. The authority upon which the plaintiff advances its position consists of two cases, *Petty v. Tennessee-Missouri Bridge Commission*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), and *Dyer v. Sims*, 341 U.S. 22, 71 S.Ct. 557, 95 L.Ed. 713 (1951). Each of the cases cited by the plaintiff discusses the task of judicially construing the intention of states signatory to an interstate compact in instances where the states' intention is the subject matter of litigation, and further discusses the uniquely federal character of that task. The construction of a compact sanctioned by Congress in Art. I § 10 cl. 3 of the Constitution presents the federal question. *Delaware River Joint Toll Bridge*

*Comm. v. Colburn*, supra, [310 U.S. 419 at 427, 60 S.Ct. 1039 at 1040, 84 L.Ed. 1287]. Moreover, the meaning of the compact is a question over which this Court has the final say. *Petty*, 359 U.S. at 278, 79 S.Ct. at 788. It requires no elaborate argument to reject the suggestion that an agreement solemnly entered into between States by those who alone have political authority to speak for a State can be unilaterally nullified, or given final meaning by an organ of one of the contracting States. A State cannot be its own ultimate judge in a controversy with a sister State. To determine the nature and scope of obligations as between states, whether they arise through the legislative means of compact or the "federal common law" governing interstate controversies (*Hinderlider v. La Plata Co.*, 304 U.S. 92, 110 [58 S.Ct. 803, 811, 82 L.Ed. 1202]), is the function and duty of the Supreme Court of the Nation. *Dyer v. Sims*, 341 U.S. at 28, 71 S.Ct. at 560.

Additionally, the plaintiff has cited *League to Save Lake Tahoe v. Tahoe Regional Planning Agency*, 507 F.2d 517, *cert. denied*, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (9th Cir. 1974). That case involved an action for declaratory and injunctive relief, in which the plaintiff alleged a failure to comply with the requirements of a congressionally sanctioned interstate compact regarding protection of natural resources of a certain area. The district court dismissed the action for want of subject-matter jurisdiction, and the plaintiffs appealed. The issue before the Court of Appeals was one of first impression: whether a federal court has original jurisdiction over a suit involving construction of an interstate compact as one arising under the Constitution, laws or treaties of the United States. The Court of Appeals found that a federal court does have original jurisdiction over a suit in which the construction of a congressionally sanctioned interstate compact is considered, on the basis that congressional consent transforms the compact into a law of the United States.

For this case to be within the purview of § 1331(a), a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's claim. The gravamen of the complaint is the alleged failure of the TRPA to comply with the requirements of the Compact in various particulars. To determine the nature and scope of these requirements requires a construction of the Compact. Such construction, therefore, forms an essential element of the complaint. Thus, if the Compact can properly be characterized as a "law" of the United States, then federal jurisdiction is established.

*League*, 507 F.2d at 519.

In *League*, the Ninth Circuit cited *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), for the proposition that a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's claim in order to obtain § 1331(a) jurisdiction. In conjunction with *Gully*, the Ninth Circuit cited *Delaware River Comm'n v. Colburn*, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940), in which the Supreme Court stated, in essence, that the construction of the bi-state compact sanctioned by Congress by virtue of Article I, Section 10, Clause 3, of the Constitution, involves a federal title, right, privilege, or immunity which, when specially set up or claimed in a state court may be reviewed in the Supreme Court on *certiorari* under § 237(b) of the Judicial Code. The implication of the Ninth Circuit's citation of the *Colburn* case is, of course, that the task of construing the Compact urged by the parties in this case is cognizable in this Court, insofar as construction of the Compact in issue would implicate a federal right, title, privilege, or immunity, which, as both *Gully* and *League* have instructed us, is an essential element for bringing such a claim within the purview of § 1331(a).

While the court in *Colburn* felt it unnecessary to clearly articulate the basic premise of its decision, we conclude after careful investigation that the result there was based on the implicit finding that the interstate compact involved was a "statute of the United States" within the meaning of 28 U.S.C. § 1257(3). Neither logic nor policy justifies a different interpretation of the substantially similar language in 28 U.S.C. § 1331(a). Therefore, a case involving the construction of an interstate compact which requires a judicial determination of the nature and scope of obligations set forth therein "arises" under the "laws of the United States within the meaning of § 1331(a)."

*League*, 507 F.2d at 521.

While the plaintiff has firmly established that an interstate compact approved by Congress is, upon Congressional approval, a "law of the United States", and that this Court is empowered, under § 1331(a) to construe such compact, the plaintiff has also advanced its argument one step further. The plaintiff has argued that ". . . the question of interpretation presented by any interstate compact was not up to a state but was rather a purely federal question . . .." The plaintiff further argues that, ". . . from the teaching of *Petty, supra, Dyer v. Sims, supra,* and *Hinderlider, supra,* [we know] that states do not have the power to unilaterally emasculate any of the Compact provisions or to burden the Compact with a state law or a state interpretation . . .", and further yet, that:

> *League*, supra, teaches us that a compact is a special federal law which only a [sic] United States Supreme Court (or, as in this case, an inferior federal court) has the exclusive power to finally construe and enforce.

Finally, the plaintiff asserts that:

> In substance, the Compact is a special federal act which vests special, exclusive jurisdiction over Compact construction, breaches or enforcement questions in federal courts. Therefore, not only is the question of partial summary judgment exclusively federal, the State of Montana does not even have jurisdiction to decide it.

The substance of plaintiff's argument is that the only forum in which the issues between these parties may be adjudicated is the federal forum. The plaintiff bottoms its position on Article XIII of the Yellowstone River Compact (M.C.A. 85-20-101) which states that:

> Nothing in this compact shall be construed to limit or prevent any state from instituting or maintaining any action or proceeding, legal or equitable, in any federal court or the United States supreme court [sic], for the protection of any right under this compact or the enforcement of any of its provisions.

It is plaintiff's position that the signatory states have provided for lower federal court jurisdiction concurrent with that of the Supreme Court by virtue of Article XIII, and that the federal jurisdiction is exclusive. Plaintiff's argument does not, however, bear scrutiny, for its reasoning is fraught with the failure to fully understand and incorporate the terms of the Compact and its further failure to square its reasoning with the authorities it has cited as supporting its position.

> ▮ Article I(1) of the Compact states:
> Where the name of a state is used in this compact, as a party thereto, it shall be construed to include the individuals, corporations, partnerships, associations, districts, administrative departments, bureaus, political subdivisions, agencies, persons, permittees, appropriators, and all others using, claiming, or in any manner asserting any right to the use of the waters of the Yellowstone River System under the authority of said state.

In light of the language in Article I(1) of the Compact, the most pointed failure of the plaintiff's logic lies in its equation of private parties with states for the purpose of litigation. The mere inclusion of all individuals, entities and instrumentalities existing in a signatory state under the name of that state for the purpose of linguistic simplification of the Compact does not place those lesser entities on equal footing with the states. Although the plaintiff would have this Court so rule, this is not a suit between two states signatory to the Compact. It is a suit between private enterprises whose right to appropriate water is derived from the signatory states. That mere derivation of right does not cause the jurisdiction of this Court or any other federal court to be exclusive in nature. The priorities here in issue, and even the terms of the Compact itself, are susceptible of interpretation by a state court of competent jurisdiction. In such instances, because the Compact is a federal law, and because the judgment of a state court implicates or construes a federal law, the Supreme Court remains as the final arbiter of any federal questions therein raised; but by no stretch of logic does the Supreme Court's *certiorari* jurisdiction over judgments of the highest court of a state equate with the exclusive jurisdiction that the plaintiff would, by its argument, manufacture.

Looking more closely at plaintiff's supporting authorities, further logical failure in plaintiff's argument surfaces. *Dyer v. Sims, supra*, a case relied upon heavily by the plaintiff for the proposition that federal jurisdiction over interstate compacts is exclusive, originally arose in the West Virginia courts and was before the Supreme Court on *certiorari* to the West Virginia Supreme Court of Appeals. Plaintiff's argument in support of exclusive federal jurisdiction cannot stand in light of the fact that an interstate compact dispute, as was *Dyer*, arose in the courts of a state and, on *certiorari*, was *remanded* to the state court for further proceedings. Such action by the Supreme Court certainly would not be consistent with the proposition of exclusive federal jurisdiction for which the plaintiff has cited the case. Rather, *Dyer* stands for the more reasoned and legally consistent proposition that the jurisdiction of federal and state courts to construe interstate compacts—or any other federal law—when the parties are individuals, is concurrent. The Supreme Court then sits, by virtue of its *certiorari* jurisdiction, as the final arbiter of federal law. It is evident, then, that plaintiff's contention that this Court is obligated to determine each of the issues between the parties to this action, insofar as it is the

only Court capable of assuming and exercising jurisdiction, must be rejected.

 This Court does, however, recognize its jurisdiction under § 1331(a), concurrent with that of the State of Montana, to construe the terms of the Compact. However, merely because this Court has § 1331(a) jurisdiction to determine certain of the issues before it does not oblige it to determine all of the issues before it. It must be borne in mind that, in concert with § 1331(a), plaintiff has predicated this Court's jurisdiction upon § 2201, the declaratory judgment statute. Insofar as the relief sought by the plaintiff in this action is declaratory in character, the Court must regulate the exercise of its jurisdiction by reference to § 2201.

It has long been held that a federal court's exercise of jurisdiction under § 2201 is discretionary.

The Declaratory Judgment Act of 1934, now 28 U.S.C. § 2201, styled "creation of a remedy", provides that in a case of actual controversy, a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought." This is an enabling act, which confers a discretion upon the courts rather than an absolute right upon the litigant.

*Public Service Commission of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952).

Because this Court's jurisdiction under § 2201 is discretionary, the exercise of that jurisdiction must be attended by a careful weighing of the effects of that exercise, giving due consideration, in this case, to the pending litigation in the Montana State District Court. Again, *Public Service Comm'n v. Wycoff, supra,* provides guidance in assuming declaratory jurisdiction.

But when all of the axioms have been exhausted and all words of definition have been spent, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it was designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especially in the field of public law. A maximum of caution is necessary in the type of litigation that we have here, where a ruling is sought that would reach far beyond the particular case.

Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court. If the cause of action, which the declaratory defendant threatens to assert, does not itself involve a claim under federal law, it is doubtful that a federal court may entertain an action for a declaratory judgment establishing a defense to that claim. This is dubious even though the declaratory complaint sets forth the claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action. Federal courts will not seize litigations from state courts merely because one, normally a defendant, goes to federal court to begin his federal-law defense before the state court begins the case under state law.

*Public Service Comm'n,* 344 U.S. at 248, 73 S.Ct. at 242–243.

In weighing all of the facts and circumstances in this case, I find that declaratory judgment may properly issue to the extent of construing certain disputed terms of the Compact, but that, as to all other issues raised by the parties, deference to the action presently pending in the Montana State District Court is proper.

The disputed provisions of the Compact requiring reconciliation are Articles VII and XVIII. In pertinent part, Article VII provides:

(2) Each claim hereafter initiated for an appropriation of water in one signatory state for use in another signatory state

shall be filed in the office of the state engineer of the signatory state in which the water is to be diverted, and a duplicate copy of the application or notice shall be filed in the office of the state engineer of the signatory state in which the water is to be used.

(3) Appropriations may hereafter be adjudicated in the state in which the water is diverted, and where a portion or all of the lands irrigated are in another signatory state, such adjudications shall be confirmed in that state by the proper authority. Each adjudication is to conform with the laws of the state where the water is diverted and shall be recorded in the county and state where the water is used.

Article XVIII provides:

No sentence, phrase, or clause in this compact or in any provision thereof shall be construed or interpreted to divest any signatory state or any of the agencies or officers of such states of the jurisdiction of the water of each state as apportioned in this compact.

It is the plaintiff's contention that the terms of the Compact give Wyoming exclusive jurisdiction to determine the priority date of waters diverted within the state of Wyoming, even if for use in another signatory state. The effect of this argument is, of course, to affirm the present date of priority enjoyed by the plaintiff. It is the defendant's contention that Wyoming cannot accord a priority date to waters which are to be charged against Montana's allocation under the Compact, and that Article XVIII vests in each signatory state the "final say" as to both the priority of appropriative right and the use to which Compact water charged to its allocation will be designated. Both the plaintiff and the defendant have strained the terms of the Compact in an effort to achieve the end most beneficial to their respective positions, and have, in so doing, postulated that Articles VII and XVIII are inconsistent. I disagree.

▄▄▄ To begin with, each article of the Compact is presumptively consistent with the body of the Compact as a whole, and is entitled to its presumptive validity and consistency until it is otherwise clearly shown. Beyond that basic tenet of statutory construction, it is further to be presumed that each article of the Compact was crafted by its drafters to serve a specific purpose; it is the obligation of this Court to give effect to that purpose.

▄▄▄ From the terms of Article VII it can clearly be seen that the Compact contemplates and has provided for appropriations involving diversion in one signatory state and use in another.

Appropriations may hereafter be adjudicated in the state in which the water is diverted, and where a portion of all of the lands irrigated are in another signatory state, such adjudications shall be confirmed in that state by the proper authority.

It can also clearly be seen in Article XVIII that the drafters intended that the Compact not operate in derogation of the sovereignty of any signatory state.

Reconciliation of these Compact provisions can be achieved through attention to the language of Article VII. As a fundamental matter, Article VII(2) contemplates that the appropriation of Compact waters which entails diversion in one signatory state and use in another occur as an operation of the joint sovereignty of the states involved. The provision for cross-filing in each state indicates that the law of each sovereign is implicated in determining the issues surrounding a given appropriation. Article VII(3) contemplates that any adjudication of a water right deriving from more than one sovereign be conducted in conformity with and according to the law of the state in which the water is diverted. It is not, under the provisions of VII(3), mandated that such adjudication be had in the courts of the state where the water is diverted. Rather, the choice of forum is permissive within the Article. "Appropriations *may* hereafter be adjudicated in the state in which the water is diverted . . . ." (Emphasis added.) Only choice of law is governed by Article VII(3). It is further provided, in keeping with the theme of joint

operation of sovereignty evident in the Compact, that an adjudication of water diverted in one state, although conducted in conformity with the state of diversion, must be confirmed by the appropriate authority in the state of use. Implicit in this scheme is the assumption that each sovereign in a multi-sovereign appropriation has authority over every aspect of the appropriation, from priority date to definition of the beneficial use to which the water is put. Although no sovereign's authority can extend beyond its territorial boundaries, the requirement of confirmation of any multi-state adjudication provides an internal check on an adjudication conducted in a state of diversion on those aspects of the adjudication affecting the state of use. Thus, the Compact can be seen to contemplate a vehicle for maintaining consistency in the adjudication of Compact waters by providing a framework for two or more states to strike an agreement on any given multi-state appropriation. When an adjudication is in such a form as is acceptable to all states involved, a permit may be issued and water rights established in conformity with both the law and the overall water use policy of the states.

■ Translated to the facts of this case, the foregoing construction imports that Wyoming does not, as the plaintiff has argued, have the sole jurisdiction to adjudicate the water right in issue. Although Wyoming is the state of diversion for the appropriation sought by both parties, thus mandating the application of Wyoming law in any adjudication, the action is equally cognizable in either Wyoming or Montana. As the Montana State District Court presently has such an action before it, the greater wisdom lies in permitting that action to proceed to its conclusion. The Montana courts are perfectly able to apply the law of Wyoming in the course of such proceedings. As an additional benefit, the Montana forum also will have before it previously unconsidered questions of state law which control the application of the Montana Water Use Act to Yellowstone River Compact waters. A Montana State District Court adjudication of the water right in dispute would also, it seems, serve as the confirmation required by the Compact, resulting in an economical use of judicial resources. By proceeding in the manner outlined above, the terms of the Compact are satisfied. The joint sovereignty of Montana and Wyoming over the Compact waters in issue is recognized and permitted the leeway essential to its proper function, while at no time divesting or impinging upon either state's sovereign control over those waters found within its boundaries.

As previously stated, I find that, except for those Articles of the Compact discussed above, the issues raised in this case are more properly considered by the Montana State District Court. As previously noted, this Court's declaratory jurisdiction is discretionary, not mandatory. In declining to exercise jurisdiction in this case, I rely upon the permissive character of § 2201 and the doctrine of abstention as recently defined by the Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In that case, the United States brought suit in its own behalf and on behalf of two Indian tribes, seeking a declaration of its rights to waters in certain rivers and their tributaries in Colorado. The United States District Court for the District of Colorado granted a motion to dismiss, stating that the doctrine of abstention required deference to proceedings filed before the Colorado water rights adjudication court. The Court of Appeals reversed the District Court, but, on *certiorari,* was itself reversed.

In holding that the District Court's dismissal of the action was proper, although on grounds other than abstention, the Supreme Court discussed the application of the doctrine of abstention in some detail. That discussion is directly applicable to the case presently before this Court.

Quoting from *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1950), the Court stated that:

The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

In defining those classes of cases in which the abstention doctrine is properly invoked, the Court stated that

[a]bstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar. . . . In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Colorado River Water Conservation District v. United States*, 424 U.S. at 814, 96 S.Ct. at 1244, 1245.

█ The case presently before the Court is such as was described by the Supreme Court in *Colorado River* as being proper for abstention. The law of the State of Montana concerning the effect of the Yellowstone River Compact upon the terms of the Montana Water Use Act, and the manner by which Compact appropriations are to be managed under the Water Use Act is unsettled. This Court's efforts to discover any previous consideration by the Montana Court of questions such as these has been fruitless. Because the law of Montana is unsettled in this area, a decision of the claims which implicate Montana law stands to greatly impair efforts of the State of Montana to implement state policy in administering Compact waters. Indeed, deci-

sion by this Court of the claims presently before it may operate to the derogation of all parties to the Compact, in their efforts to effect policy respecting the allocation of state waters. Because, then, a decision by this Court upon the issues presently before it reasonably stands to retard rather than advance the purpose of mutual determination of the proper allocation of interstate waters and, further, would greatly infringe upon the interest, which is uniquely Montana's, of effectuating its policy for administering Compact waters, this Court finds that it must abstain from the exercise of its jurisdiction in this case, and, further, that this cause should proceed in the courts of the State of Montana.

Therefore, upon the basis of the foregoing,

IT IS ORDERED that the motion to dismiss for want of subject matter jurisdiction be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the motion to dismiss for failure to state a claim be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the motion for stay of all proceedings herein pending determination of the action presently pending in the Montana State District Court be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the motion for certification of a question of state law to the Supreme Court of the State of Montana be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment be, and the same hereby is, denied.

IT IS FURTHER ORDERED that the motion for abstention and referral of this cause to the Montana State District Court be, and the same hereby is, granted.