No. 81-14

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

INGRAM-CLEVENGER, INC., a Montana
Corporation, EDWARD P. McHUGH, GENE R. and
MARGARET L. PORTER, et al.,

Plaintiffs and Respondents,

vs.

LEWIS AND CLARK COUNTY; LEWIS & CLARK
BOARD OF COUNTY COMMISSIONERS; BOB
DECKER; et al.,

Defendants and Appellants.

_____

Appeal from: District Court of the First Judicial District,
In and for the County of Lewis and Clark.
Honorable Peter Meloy, Judge presiding.

Counsel of Record:

For Appellants:

Charles A. Graveley, County Attorney, Helena, Montana

For Respondents:

Keller, Reynolds, Drake, Sternhagen, & Johnson,
Helena, Montana
Gough, Shanahan, Johnson & Waterman, Helena, Montana

_____

Submitted on briefs: July 2, 1981

Decided: OCT 2 0 1981

Filed: OCT 2 0 1981

Thomas J. Kearney

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant Lewis and Clark County Board of Commissioners appeals from the order of the First Judicial District Court granting plaintiffs' petition for a peremptory writ of mandamus directing the defendant to grant plaintiffs' petition to partially abandon the County's claim of right-of-way easement to the outer twenty feet on each side of McHugh Lane, thus reducing the easement from one hundred feet to sixty feet.

The county commissioners present the following issues:

1. Whether a writ of mandamus is the proper remedy in this case.

a. Which statute controls the abandonment of county roads?

b. Is the controlling statute mandatory or discretionary?

2. Whether any rights of the plaintiffs to the portion of roadway they seek to have abandoned were adversely affected by the actions of the board of county commissioners.

In addition, the plaintiffs include this issue:

1. Did the defendant properly deny the petition to partially abandon McHugh Lane?

We reverse the District Court.

McHugh Lane (or Drive) is a county road running north-south through the Helena Valley. In 1890, Lewis and Clark County was granted a 100-foot right-of-way to establish the road.

On June 6, 1980, plaintiffs presented the board of

-2-

county commissioners with a petition signed by every landowner owning property adjacent to McHugh Lane. The petition requested that the County abandon forty feet of the McHugh Lane right-of-way (twenty feet on each side). The petition was discussed at a regularly scheduled and noticed hearing of the Lewis and Clark County Commissioners on July 22, 1980. At this time, the commissioners found the petition to be in proper form required under section 7-14-2602, MCA, a finding reiterated in defendant's brief. The commissioners denied the petition.

On August 22, 1980, plaintiffs filed suit, seeking a peremptory writ of mandamus against Lewis and Clark County, the board of county commissioners and the three county commissioners. Oral argument as to the applicable law was heard on September 3, 1980. Briefs were submitted at the District Court judge's request. On October 20, 1980, the District Court issued its order and opinion, granting plaintiffs' writ of mandate and directing the board of county commissioners to forthwith grant the petition to partially abandon McHugh Lane. The District Court awarded attorney fees and costs to plaintiffs. The County appeals.

Through their briefs, the parties agree that the following principles should be applied:

(1) The District Court may issue a writ of mandate compelling the county commissioners to perform an act which the law specifically requires as a duty of their office. State ex rel. Browman v. Wood (1975), 168 Mont. 341, 344-345, 543 P.2d 184, 187.

(2) If the act to be performed is discretionary rather than mandatory, ordinarily mandamus will not lie.

Cain v. Department of Health, etc. (1978), 177 Mont. 448, 451, 582 P.2d 332, 334.

(3) If there has been such an abuse of discretion as to amount to no exercise of discretion at all, mandamus will lie to compel the proper exericse of powers granted. Cain v. Department of Health, etc. (1978), 177 Mont, 448, 451, 582 P.2d 332, 334.

(4) When specific statutory language conflicts or is inconsistent with general statutory language, the specific statutory language will prevail to the extent of any repugnancy. Mont. Health Systems v. Mont. Bd. of Health (1980), ___ Mont. ___, 612 P.2d 1275, 1276, 37 St.Rep. 664, 666.

I

The parties disagree as to which statutes are specific and which are general, and therefore disagree as to which statute or statutes control. Section 7-14-2103(3), MCA, appears to be mandatory in wording, while section 7-14-2601 et seq., MCA, appear to be discretionary. The District Court found that section 7-14-2103(3), MCA, was the specific statute governing the action and was mandatory, and therefore granted mandamus.

The relevant statutes follow.

Under the heading "General Provisions Related to County Roads," section 7-14-2103, MCA, provides:

> "Duties of county commissioners concerning county roads. . . . (3) Each board shall discontinue or abandon county roads when freeholders properly petition therefor." (Emphasis supplied.)

Under the heading "Establishment, Alteration, and Abandonment of County Roads", section 7-14-2601, MCA,

-4-

provides in pertinent part:

> "7-14-2601. <u>Petition to establish, alter, or</u>
> <u>abandon a county road.</u> (1) Any 10, or a
> majority, of the freeholders of a road dis-
> trict taxable therein for road purposes may
> petition the board in writing to open, estab-
> lish, construct, change, abandon, or discon-
> tinue any county road in the district."

Section 7-14-2602, MCA, establishes what information must be set forth in the petition. Section 7-14-2603, MCA, provides for an investigation to determine the merits of the petition and allow the board to reach a decision. Section 7-14-2604, MCA, requires the board to notify adjoining landowners within ten days of its decision.

Clearly, section 7-14-2103(3), MCA, is mandatory in wording, stating that the county commissioners "<u>shall. . .</u> <u>abandon county roads</u>" when properly petitioned. Section 7-14-2601 et seq., MCA, require the exercise of discretion by the board; they provide for a study of the "feasibility, desirability and cost of granting the prayer," and refer several times to the "decision" of the board. That decision is to be based upon the "merits or demerits of the petition," and can only mean a decision to grant the petition or deny it.

Defendant argues that the provisions governing the procedure for abandoning county roads, section 7-14-2601 et seq., MCA, are specific and must prevail over section 7-14-2103(3), MCA, which appears under the heading "General Pro-visions . . ." Defendant emphasizes that (1) all the procedural requirements, including notice and hearing and an investigation of the feasibility of the petition, have been complied with; (2) the decision to deny the petition to abandon was discretionary, and mandamus will not lie.

-5-

Plaintiffs contend that section 7-14-2103(3), MCA, is mandatory and is the specific provision and must prevail. Plaintiffs further contend that the county commissioners failed to partially abandon when properly petitioned by all adjoining landowners and thus, because they refused to perform a duty legally required of them, mandamus is the proper remedy.

This Court is aware that a District Court's decision to grant or deny a writ of mandate is a matter of discretion and will be sustained on appeal in the absence of a showing of abuse of discretion. Cain v. Department of Health, etc. (1978), 177 Mont. 448, 451, 582 P.2d 332, 334. The District Court judge here, attempting to reconcile section 7-14-2103(3), MCA, with section 7-14-2601 et seq., MCA, concluded that the latter provisions apply only when the petition to abandon is disputed, and that, under the circumstances of this case, section 7-14-2103(3), MCA, is the specific statute which governs and mandates abandonment when it is sought by all adjoining landowners by a proper petition.

We must disagree. There is no language in section 7-14-2103(3), MCA, which indicates that it applies only to a unanimous petition to abandon. Nor is there language in section 7-14-2601 et seq., MCA, which indicates that the procedural requirements therein apply only to disputed petitions. Indeed, for a determination whether a petition to abandon is proper within the meaning of section 7-14-2103(3), MCA, it is necessary to look to the provisions of section 7-14-2601 and -2602, MCA, which specify who should bring the petition and what information the petition must contain.

-6-

In Chennault v. Sager (1980), ____ Mont. _____, 610 P.2d 173, 175, 37 St.Rep. 857, 859-860, this Court stated:

"The statutory scheme for the abandonment of county roads is found in sections 7-14-2601 through 7-14-2621, MCA. To initiate proceedings, any ten or a majority of freeholders of a road district petition the board of county commissioners for the abandonment of a particular road. Section 7-14-2601, MCA, Within thirty days after the filing of the petition, the commissioners cause an investigation to be conducted regarding the merits of the petition. Section 7-14-2603, MCA. A public hearing is then scheduled and notice of the hearing is given. Section 7-14-2615(2), MCA. The results of the investigation and the hearing are considered by the commissioners, and a decision is entered whether to abandon the road. Within ten days after the decision, the commissioners cause notice of their decision to be sent to all owners of land abutting the road for which abandonment was sought. Section 7-14-2604, MCA."

There is no reference in Chennault, supra, to section 7-14-2103(3), MCA, as governing the abandonment of county roads. Nor is there any distinction drawn between petitions brought by a few adjoining landowners and those brought by all adjoining landowners, as long as the guidelines set in section 7-14-2601, MCA, are met.

In Dept. of Revenue v. Puget Sound Power & Light (1978), ____ Mont. ___, 587 P.2d 1282, 1287, 35 St.Rep. 1368, 1373, we stated:

"Although a cardinal rule of statutory construction is that the intent of the legislature must first be determined from the plain meaning of the words used [citation omitted], in determining the legislative intent in enacting a statute, a court can resort to the history of the statute. [Citation omitted.]"

The statutes in question here were the result of a fifteen-month recodification study done by the Montana State University (now University of Montana) School of Law for the

Montana State Highway Commission in cooperation with the United States Department of Commerce, Bureau of Public Roads. The study culminated in the publication in 1964 of a booklet entitled, "Research Report on the Montana Highway Code," which contained the old code, a proposed new code and a commentary. The proposed code was introduced during the 1965 legislative session by the Committee on Highways and Transportation as Senate Bill 170 and was adopted with little revision and no changes pertinent to this inquiry. The new law included a statement of legislative intent (Chapter 1, section 2) containing the following statements:

> ". . . [T]he legislative assembly intends:
>
> "(1) To place a high degree of trust in the hands of those officials whose duty it is, within the limits of available funds, to plan, develop, operate, maintain and protect the highway facilities of this state for present as well as for future use.
>
> "(2) To make the state highway commission custodian of the federal-aid and state highways, and to impose similar responsibilities upon the boards of county commissioners with respect to county roads and upon municipal officials with respect to the streets under their jurisdiction.
>
> "(3) That the state of Montana shall have integrated systems of highways, roads, and streets, and that the state highway commission, the counties and municipalities assist and cooperate with each other to that end.
>
> "(4) To provide sufficiently broad authority to enable the highway officials at all levels of government to function adequately and efficiently in all areas of their respective responsibilities, subject to the limitations of the constitution and the legislative mandate hereinafter imposed."

Clearly, the legislature intended to vest broad authority and discretion in county officials.

In the Research Report at pages 45-46 and again at page 137, the commentary to both proposed new code sections

referring to the abandonment of county roads (now sections 7-14-2103 and 7-14-2601, MCA) indicates that the purpose of the sections is to ensure that county commissioners can discontinue or abandon roads only when they are properly petitioned by interested landowners. There is no statement of intent to force county commissioners to abandon county roads at the landowners' request.

We must keep in mind that the board of county commissioners is given the discretion to do whatever is necessary for the best interests of county roads. This discretion is contained in section 7-14-2102, MCA, which states: "Each board of county commissioners may in its discretion do whatever may be necessary for the best interest of the county roads and the road districts."

After a consideration of all applicable statutes, we conclude that the specific statutes applicable to this action are section 7-14-2601 et seq., MCA. These statutes show that the county commissioners have the discretion to grant or deny a petition to abandon county roads. As above quoted, Chennault supports that conclusion.

Such a conclusion does not render section 7-14-2103(3), MCA, meaningless or without effect, as suggested by plaintiffs. The section reasonably can be interpreted to mean that the county commissioners shall abandon county roads when a sufficient petition is filed, which, after the requisite investigation, is found to be feasible and desirable for the use and benefit of the public. In this case, the county commissioners concluded that: (1) Snow removal activity and drainage improvements would be hampered by the abandonment of a twenty-foot strip on either edge of

-9-

the McHugh Lane right-of-way. (2) The county is considering constructing a bike/pedestrian way along McHugh Drive for the benefit of school children. (3) Finally, there is the possibility that the planning office of the State Highway Department is considering using McHugh Lane as a main roadway, as it is more centrally located than Montana Avenue. Each of the above conclusions supports the decision of the board of county commissioners not to grant the petition which would narrow the McHugh Lane right-of-way by 40 percent.

This Court finds that because the specific statutes governing abandonment of county roads are discretionary, and because the county commissioners have not manifestly abused their discretion in denying plaintiffs' petition, mandamus will not lie.

II

It is unnecessary for this Court to address the second issue, since, even if plaintiffs' property interests are adversely affected by the denial of their petition to abandon, a writ of mandate may not be brought under the circumstances of this case.

III

Plaintiffs argue that the defendant improperly denied the petition to partially abandon the McHugh Lane right-of-way. But plaintiffs' argument is based entirely upon their position that defendant violated a mandatory duty as set forth in section 7-14-2103(3), MCA. We have held above that the discretionary statutes, section 7-14-2601 et seq., MCA, are the specific statutes which govern in this case and that

-10-

the county commissioners did not abuse their discretion. Plaintiffs' argument is without merit.

We therefore vacate the order of the District Court. The denial by the board of county commissioners of the petition to abandon remains in full force and effect.

_____
Justice

We concur:

_____
Daniel J. Shea

_____

_____
John Conway Harrison

_____
John C. Sheehy
Justices